IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLIFFORD K. McDONOUGH,

Petitioner,

vs.

SUSAN L. HUBBARD, Warden, California
State Prison, Corcoran,

Respondent.

No. 2:11-cv-02094-JKS

MEMORANDUM DECISION

Clifford K. McDonough, a state prisoner appearing *pro se*, filed a Petition for a Writ of
Habeas Corpus under 28 U.S.C. § 2254.  McDonough is currently in the custody of the California
Department of Rehabilitation and Community Supervision, incarcerated at the California State
Prison, Corcoran.  Respondent has answered, and McDonough has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

McDonough was convicted by a jury of second degree murder (Cal. Penal Code § 187),
corporal injury with great bodily injury (Cal. Penal Code §§ 273.5(a), 12022(e)), and
misdemeanor battery (Cal. Penal Code § 242).  In December 2008 the Nevada County Superior
Court sentenced McDonough to an aggregate prison term of twenty-one years to life on the two
felony convictions, with a concurrent prison term of six months on the misdemeanor battery
conviction.  The California Court of Appeal, Third Appellate District, affirmed McDonough's
conviction and sentence in an unpublished decision,[1] and the California Supreme Court denied

---

[1] *People v. McDonough*, No. C060726, 2010 WL 2173840 (Cal. Ct. App. June 1, 2010).

review on September 22, 2010.  McDonough timely filed his Petition for relief in this Court on

July 7, 2011.

The facts underlying McDonough's conviction as recited by the California Court of

Appeal:

Defendant and Cindy McDonough married in 2005, but separated about a year later at Cindy's insistence.  After separating, defendant and Cindy had sexual relations on rare occasion.  In November 2006, Cindy filed for divorce.

In August 2007, Cindy met Donald Sullivan, her neighbor.  They became friends, and later, more than that.

On October 22, 2007, the day of the incident at issue, defendant visited Cindy and asked about getting back together (the two were still technically married at this point).  Cindy declined defendant's overture.

Defendant asked Cindy if she had slept with Sullivan.  Cindy untruthfully replied "no," but noted that Sullivan "cared for [her] a lot."  This angered defendant and he said he "wanted to kick someone's ass."

Defendant then asked Cindy for a ride home.  After going to get her shoes, she returned to find that defendant had "disappeared."

Cindy went to Sullivan's to get her cell phone so she could call defendant. Defendant, Sullivan, and Sullivan's friend, Peter "Zach" Walsh, were there. Defendant told Cindy to give him "a f[uck]ing minute."  Cindy went outside.  After not hearing any arguing or fighting, she returned home.

Walsh testified that an angry defendant accused Sullivan of sleeping with Cindy, whom defendant referred to as his "ex-wife."  Sullivan calmly denied the accusation, but defendant continued on, threatening both Sullivan and Walsh.

After about a half-hour of varying tirades, defendant calmed down.  He and Sullivan shook hands, and decided to have a drink together.  After a shot or two of Scotch, defendant and Sullivan began to "play wrestle" on the floor.  Both men were "smiling and laughing ."

At this point, Walsh left and walked to another neighbor's house, smoking a cigarette while outside there.  When Walsh returned to Sullivan's and approached his front door, defendant charged out, kicking the door open.  Shirtless and clenching his fist, defendant said to Walsh, "You want some of this?  You want some of this? I just beat the holy crap out of [Sullivan].  You want some of this?"  Looking past defendant, Walsh saw Sullivan lying on the floor and said: "Oh, my God. What have you done?"  Walsh started to walk inside to help Sullivan, but defendant spun him around and punched him in the nose. Defendant landed two more blows, knocking Walsh onto a sofa.

From his position on the sofa, Walsh could see Sullivan, whose face was "blown up" at least twice its normal size, and who was "gasping" or "gurgling" for breath while lying motionless.  Defendant turned his attention back to Sullivan,

2

screaming, "And for you, you son of a bitch, I told you to stay away from my wife." Then, lifting his foot as high as he could, defendant stomped on Sullivan's face at least three or four times.  Again, Sullivan did not move.

During the stomping, Walsh fled and summoned aid.

In the meantime, defendant, "very drunk" and "very angry," appeared at Cindy's, demanding a ride home.  He was "yelling and screaming" that Sullivan had told him that Cindy and Sullivan had "slept" together.  Defendant then hit Cindy about six times in the face, kicked her in the stomach, ribs and legs, and began choking her, demanding to "know why" she had "slept" with Sullivan.  Cindy escaped to a neighbor's.

Another neighbor went to check on Sullivan and saw him lying on his back, his face so bloody as to be almost unrecognizable.  Sullivan's only movements were involuntary twitchings and he was gurgling for air.  Sullivan stopped breathing and subsequently died at the hospital after being stabilized initially.

Defendant was apprehended in the area that evening after a short pursuit.  He was taken to a hospital's emergency room, where the nurse noted he appeared intoxicated; he was treated for minor injuries arising out of the incident (a small, superficial laceration on his head and a tender jaw).

An autopsy and an imaging study disclosed that Sullivan had a fractured eye socket, nose, and hyoid bone (high in the neck); two fractures of the lower jawbone; at least 10 rib fractures; and three vertebral fractures.  Some of these injuries, especially to the thick lower jawbone, the ribs, and the vertebrae, required a "significant amount of force."  This considerable force also caused a "severe brain injury."  The cause of death was multiple blunt force trauma.

Sullivan's blood contained methamphetamine and alcohol.

Defendant testified that Sullivan informed him that he was "sleeping with Cindy" and that defendant should "just leave town."  Defendant then agreed to (the larger) Sullivan's request to have some drinks.

Later, defendant remarked nastily to Sullivan "about what kind of a man shakes a man's hand and then sleeps with his wife."  Sullivan pushed defendant, defendant returned the favor, and then Sullivan decked defendant.  Defendant proceeded to punch and knee Sullivan in the face five times, and left.

Defendant also testified that he hit Sullivan only because Sullivan had hit him first; the issue of Sullivan sleeping with Cindy had "[a]lready been resolved."  To defendant's knowledge, Sullivan was the fourth man with whom Cindy had been intimate during their separation.

Defendant presented evidence that Sullivan, while drinking, had been violent with two women he had dated; and also evidence of the correlation between alcohol, methamphetamine use and violent behavior.[2]

---

[2] *Id.* at *1-2.

## II.  GROUNDS RAISED/DEFENSES

McDonough raises five grounds:  (1) the trial court erred in failing to instruct on involuntary manslaughter; (2) the trial court denied him due process by instructing that voluntary intoxication cannot negate implied malice; (3) prosecutorial misconduct in improperly defining voluntary manslaughter, and his trial counsel ineffectively failed to object to the prosecutor's closing argument that improperly defined voluntary manslaughter; (4) cumulative error; and (5) the great bodily injury finding was not supported by substantial evidence.  Respondent does not assert any affirmative defense.[3]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

---

[3] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2012).

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412 (alteration added).

4

power of the Supreme Court over federal courts.[6]   Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]   When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[8]   The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[9]   "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]   In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[11]   Because state court judgments of

---

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings.  *Cf. Felker v.
> Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing
> AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue
> the writ in cases where there is no possibility fairminded jurists could disagree that
> the state court's decision conflicts with this Court's precedents.  It goes no farther.*
> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme
> malfunctions in the state criminal justice systems," not a substitute for ordinary error
> correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct.
> 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition
> for obtaining habeas corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court was so lacking in
> justification that there was an error well understood and comprehended in existing
> law beyond any possibility for fairminded disagreement.[13]

In applying this standard, this Court reviews the "last reasoned decision" by the state

court.[14]  State appellate court decisions that summarily affirm a lower court's opinion without

explanation are presumed to have adopted the reasoning of the lower court.[15]  This Court gives

---

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v.
Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas
relief on the basis of little more than speculation with slight support").

[13] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[14] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297
F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining
"how federal courts in habeas proceedings are to determine whether an unexplained order . . .
rests primarily on federal law," and noting that federal courts must start by examining "the last
reasoned opinion on the claim . . . . ").

[15] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting
a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest
upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider
the issue has recognized, determining whether a states court's decision resulted from an

the presumed decision of the state court the same AEDPA deference that it would give a

reasoned decision of the state court.[16]

## IV.  DISCUSSION

Ground 1:  Involuntary Manslaughter Instruction

      The California Court of Appeal rejected the argument that the trial court should have *sua sponte* instructed the jury on involuntary manslaughter on the basis that the evidence did not

support such an instruction.[17]  While it is true that due process and the Sixth Amendment to the

Constitution require that a jury be correctly instructed as to every element of the crime with

which a defendant is charged and convicted,[18] that is not the issue before this Court.  The issue

before this Court is whether due process requires that a jury in a criminal trial be instructed at all

or correctly instructed as to all necessarily included lesser offenses.  Supreme Court precedent

does not require a trial court to instruct the jury on a lesser included offense in a non-capital

case,[19] and the Ninth Circuit has concluded that such a claim is not cognizable on federal habeas

review.[20]  McDonough is not entitled to relief under his first ground.

---

unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

    [16] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

    [17] *McDonough*, 2010 WL 2173840 at *3-4.

    [18] *See United States v. Gaudin*, 515 U.S. 506, 522-23 (1995).

    [19] *Beck v. Alabama,* 447 U.S. 625, 638 (1980).

    [20] *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *see also* 28 U.S.C. § 2254(d)(1); *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.").

<u>Ground 2:  Voluntary Intoxication Instruction</u>

The trial court gave the jury the standard California instruction that voluntary intoxication cannot negate implied malice for the purposes of second-degree murder [CALCRIM 3426]. McDonough contends that giving this instruction denied him due process.  The California Court of Appeal disagreed, holding:

> This same constitutional claim was made and rejected in *People v. Martin* (2000) 78 Cal.App.4th 1107 and *People v. Timms* (2007) 151 Cal.App.4th 1292.  We find those two cases persuasive.  In a nutshell, as explained in *Timms:* "The absence of implied malice from the exceptions listed in [section 22,] subdivision (b) is itself a [legislative] policy statement that murder under an implied malice theory comes within the general rule of [section 22,] subdivision (a) such that voluntary intoxication can serve no defensive purpose.  In other words, section 22, subdivision (b) is not 'merely an evidentiary prescription'; rather, it 'embodies a legislative judgment regarding the circumstances under which individuals may be held criminally responsible for their actions.'  [Citation.]  In short, voluntary intoxication is irrelevant to proof of the mental state of implied malice . . . .  Therefore, it does not lessen the prosecution's burden of proof or prevent a defendant from presenting all relevant defensive evidence [and therefore does not violate due process]."  (*Timms, supra,* 151 Cal.App.4th at pp. 1300-1301, quoting *Montana v. Egelhoff* (1996) 518 U.S. 37, 57 [135 L.Ed.2d 361, 376-377] [the deciding, conc. opn. of Ginsburg, J., in a plur. court opn.]; see also *Martin, supra,* 78 Cal.App.4th at p. 1117.)[21]

McDonough's constitutional due process argument is foreclosed by *Egelhoff*.

McDonough is not entitled to relief under his second ground.[22]

---

[21] *McDonough*, 2010 WL 2173840 at *5.

[22] Although it does not appear that McDonough challenged the general intent instruction, this Court is not unmindful of the Ninth Circuit decision in *Ho v. Carey*, 332 F.3d 587 (9th Cir. 2003), and has considered it in reaching its decision.  *In Ho*, the Ninth Circuit held that Ho was entitled to habeas relief when the general intent instruction (CALJIC 3.30) was given together with the voluntary intoxication instruction (CALJIC 4.21.1), because CALJIC 3.30 did not exclude the general intent instruction from consideration on the second-degree murder charge, which the jury could have applied to that charge as well.  *Id*. at 592-96.  In this case, the jury was instructed with the current instruction, CALCRIM 252, in which the jury was expressly charged that, although the other crimes only required a general criminal intent, the second-degree murder charge also required a specific mental state.  Clerk's Transcript on Appeal, Vol. I at 174.  Thus,

Ground 3:  Ineffective Assistance of Counsel (Failure to Object to Prosecutor's Improper Definition of Voluntary Manslaughter)

McDonough contends his trial counsel was ineffective in failing to object when the prosecutor improperly defined voluntary manslaughter during closing argument.  The California Court of Appeal disagreed:

> During closing argument the prosecutor remarked, correctly, that "a murder charge can be reduced to voluntary manslaughter if there's provocation.  And if as a result of that [provocation] [defendant] acted rashly and under the influence of intense emotion obscuring his reasoning or judgment.  And that provocation has to cause a person of average disposition to act rashly and without due deliberation from passion rather than judgment."  These correct remarks tracked the instruction the trial court gave the jury.
>
> Later in the argument, however, the prosecutor went astray: "And then how would . . . a person . . . of . . . average disposition react in the same situation knowing the same facts? . . . [A]re you going to break 10 ribs?  Are you going to break the hyoid bone?  Are you going to break the orbital?  Are you going to break the nose?  Are you going to pound on this person's eyes and kill them?  Is that what that person of average disposition is going to do under these circumstances?  I would submit to you they would not."
>
> Here, the prosecutor crossed the line.  Voluntary manslaughter based on provocation (heat of passion) is concerned essentially about acting with a particular "mindset"; the prosecutor, however, improperly transformed that theory merely into a comparative "act set."  (See *People v. Coad* (1986) 181 Cal.App.3d 1094, 1106.)
>
> To show ineffective assistance of counsel, a defendant must show that counsel failed to act as a reasonably competent attorney, and that prejudice resulted (i.e., a reasonable probability that defendant would have fared better had counsel not failed).  (*People v. Gates* (1987) 43 Cal.3d 1168, 1183.)  Defendant cannot make either showing here.
>
> Defendant cannot meet the first prong reasonable competence—because, as the People argue, his counsel reasonably may have decided not to object to the prosecutor's challenged remarks.  The defense had focused on self-defense (Sullivan's violent character and initial aggression) and on defendant's testimony that, by the time he hit Sullivan, the issue of Sullivan having slept with Cindy had "[a]lready been resolved."  To draw attention back to the heat-of-passion theory would have diminished this focus and defendant's credibility.
>
> Nor can defendant meet the second prong prejudice.  As the People again argue persuasively, "it is not reasonably probable the jury would have concluded that

_____

because it does not contain the same infirmity, this case does not run afoul of *Ho*.

an ordinary person of average disposition would have acted rashly and without due deliberation upon hearing that his [short-term] spouse—from whom he had been legally separated for over a year [and that separation occurred not long after marriage], who he was in the process of divorcing, and who he knew had engaged in relations with three other men during their separation had been involved with a fourth man as well."   Furthermore, the trial court properly instructed the jury on the voluntary manslaughter theory of heat of passion.[23]

Under *Strickland*, to demonstrate ineffective assistance of counsel, McDonough must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[24]   A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[25] McDonough must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[26]   An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[27]   An ineffective assistance of

---

[23] *McDonough*, 2010 WL 2173840 at *6.

[24] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[25] *Id*.

[26] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[27] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." (citing *Strickland*, 466 U.S. at 687)); *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." (citations omitted)).

counsel claim should be denied if the petitioner fails to make a sufficient showing under either

one of the *Strickland* prongs.[28]

       *Strickland* and its progeny do not mandate that this Court act as a "Monday morning

quarterback" in reviewing tactical decisions.[29]  Indeed, the Supreme Court admonished in

*Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too
> tempting for a defendant to second-guess counsel's assistance after conviction or
> adverse sentence, and it is all too easy for a court, examining counsel's defense after
> it has proved unsuccessful, to conclude that a particular act or omission of counsel
> was unreasonable.  A fair assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of hindsight, to reconstruct the
> circumstances of counsel's challenged conduct, and to evaluate the conduct from
> counsel's perspective at the time.  Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance; that is, the defendant
> must overcome the presumption that, under the circumstances, the challenged action
> might be considered sound trial strategy.  There are countless ways to provide
> effective assistance in any given case.  Even the best criminal defense attorneys
> would not defend a particular client in the same way.[30]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's
> determination" under the *Strickland* standard "was incorrect but whether that
> determination was unreasonable—a substantially higher threshold." *Schriro, supra,*
> at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard,
> a state court has even more latitude to reasonably determine that a defendant has not
> satisfied that standard.  See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct.
> 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's specificity.  The more general the rule,

---

[28] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

[29] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[30] 466 U.S. at 689 (internal citations and quotation marks omitted).

the more leeway courts have in reaching outcomes in case-by-case determinations").[31]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[32]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[33]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[34]

Applying these principles to this case, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[35]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to

---

[31] *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009).

[32] *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[33] *Richter*, 131 S. Ct. at 785 (emphasis in the original).

[34] *Id.* at 786.

[35] 28 U.S.C. § 2254(d).

the facts of the Petitioner's case within the scope of *Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.  McDonough has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*.  McDonough is not entitled to relief under his third ground.

Ground 4:  Cumulative Error

McDonough contends that even if the errors raised in his first three grounds taken individually do not warrant the granting of relief, the cumulative effect of those errors does.  In rejecting McDonough's cumulative error argument, the California Court of Appeal held:  "Nor is defendant's cumulative error argument any stronger than the three previous contentions of error that comprise its foundation."[36]  Having found no individual error, it follows, *a fortiori*, that there is no cumulative error.

Ground 5: Insufficiency of Evidence—Great Bodily Injury

McDonough contends that there was insufficient evidence that Cindy McDonough's injuries constituted bodily injury.  The California Court of Appeal disagreed:

> The applicable statute defines "great bodily injury" as a "significant or substantial physical injury."  (§ 12022.7, subds.(e), (f).)  A jury's finding of "great bodily injury" is upheld if there is sufficient evidence to support it, even if a contrary finding is also reasonable.  (*People v. Escobar* (1992) 3 Cal.4th 740, 750.)
>
> The emergency room doctor who treated Cindy after defendant assaulted her testified that she suffered a broken nose, an injury to her left jaw, and bruises to her forehead and left rib cage.  Cindy added that she suffered "two broken ribs, a sunken chest cavity, multiple lacerations, and [a] slight concussion."  This is sufficient evidence of great bodily injury.  (See *People v. Nava* (1989) 207 Cal.App.3d 1490,

---

[36] *McDonough*, 2010 WL 2173840 at *7.

1498-1499 [victim's broken nose was not great bodily injury as a matter of law—the trial court there had instructed it was—although the jury could "very easily" have found such as a matter of fact].)[37]

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[38]  This Court must, therefore, determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[39]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[40]

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[41]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[42]  This Court must also

---

[37] *McDonough*, 2010 WL 2173840 at *7.

[38] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[39] *Jackson*, 443 U.S. at 318-19.

[40] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

[41] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[42] *Jackson*, 443 U.S. at 324 n. 16.

be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[43]   A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[44]   A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[45]   This is especially true where the highest court in the state has denied review of the lower court's decision.[46] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[47]   "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[48]   It is through this lens that this Court must view an insufficiency of the evidence claim.

---

[43] *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

[44] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[45] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[46] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[47] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[48] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

In this case, the California Court of Appeal held that the facts supported a finding of "great bodily injury" as defined in the California statute.  Because any attack on that determination is beyond the purview of this Court in a federal habeas proceeding, that ends the inquiry.  McDonough is not entitled to relief under his fifth ground.

## V.  CONCLUSION AND ORDER

McDonough is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[49]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[50]

The Clerk of the Court is to enter judgment accordingly.

Dated: September 11, 2012.

    /s/ James K. Singleton, Jr.      
JAMES K. SINGLETON, JR.
United States District Judge

---

[49] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[50] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.